Larry DAVIS, Appellant,

v.

The STATE of Texas, Appellee.

Ronald MITCHELL, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 48997, 49000.

Court of Criminal Appeals of Texas.

Dec. 4, 1974.

Rehearing Denied Dec. 18, 1974.

Richard M. Price, Abilene, Court appointed, for Davis.

Stan Brown, Abilene, for Mitchell.

Ed Paynter, Dist. Atty. and Billy John Edwards, Asst. Dist. Atty., Abilene, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

Both appellants were convicted in a joint trial of assault with intent to murder with malice. The jury then assessed their punishment at confinement in the Texas Department of Corrections for fourteen (14) years each.

On the morning of August 22, 1973, Texas Highway Patrolman Harold Hambrick stopped a black 1973 Cadillac bearing Tennessee license plates for speeding. Officer Hambrick succeeded in stopping the car on Interstate 20 just inside the eastern city limits of Abilene. Appellant Mitchell was driving and appellant Davis was riding in the front passenger's seat. Two hitchhikers, Richard Lloyd Nunez and Byron Harrison Scott, occupied the rear seat. A traffic citation was issued, and since the Cadillac had out-of-state license plates Officer Hambrick instructed appellant Mitchell to follow him to the Justice of the Peace in Clyde, Callahan County, where the offense had occurred. The Cadillac followed Hambrick's patrol car until it entered an exit ramp, whereupon the Cadillac accelerated and continued on Interstate 20 in a westerly direction.

Officer Hambrick then began a high speed chase which lasted some twenty-nine minutes and at times reached speeds in excess of 129 miles per hour. During the course of his pursuit of the Cadillac, Officer Hambrick radioed a call for assistance to which several law enforcement units responded. A number of shots were fired at the Cadillac by these pursuers, and it weaved from lane to lane of the multi-lane highway. As the chase continued, the Cadillac veered across the grass median and proceeded west in the eastbound traffic lanes forcing oncoming traffic off of the highway. At one point, the Cadillac manuevered around and began proceeding eastward. Finally, the automobile was brought to a stop after a tire was shot and the engine exploded due to a ruptured radiator hose. Officer Hambrick then approached the disabled car and opened the door. As he did so, appellant Mitchell remarked, "I stole this car in Memphis and these boys in the back seat (Nunez and Scott) are not involved." Abilene police officer Dwain Pyburn testified that he found a loaded .38 caliber revolver on the ground under the car about fourteen inches from the driver's side of the Cadillac. Four of the bullets in the pistol had indentations on the primer resembling those made by the striking of a firing pin, although the bullets had not actually fired.

The complaining witness, Boyd Baker, Chief of Police of Merkel, testified that on the day of this offense he was driving a 1970 Pontiac with a red "dome" light on top and five inch high letters spelling out "POLICE" on the side of each front door. Upon receiving a call about the high speed chase, he parked his police vehicle at a slight angle along the outside edge of the west bound lanes of Interstate 20 and turned on the car's red lights. Moments later, he observed the Cadillac and its pursuers bearing down on his position. Standing four feet into the outside lane, Chief Baker raised his rifle and waved it in an effort to stop the Cadillac. As the Cadillac closed to within fifty to seventy-

five yards of him, it suddenly swerved from the inside lane to the outside lane, causing Baker to jump four feet to a location in front of his vehicle. The Cadillac then hurtled past, missing Baker by about one foot. Baker fired once at the driver's head and once at the back of the Cadillac as it sped by him.

The first ground of error advanced by both appellants is that the evidence is insufficient to sustain their convictions for assault with intent to murder with malice. This court has recently explained that there are two elements necessary to establishing a violation of Article 1160, Vernon's Ann.P.C.: (1) there must be an assault; and (2) the assault must be carried out with the specific intent to kill, Boazman v. State, 501 S.W.2d 894 (Tex. Cr.App.1973). If, as in the present case, the instrument used to commit the assault is not deadly per se, then the intent may be ascertained from and shown by the surrounding facts and circumstances. Boazman v. State, supra; Hall v. State, 418 S. W.2d 810 (Tex.Cr.App.1967). Even though an automobile is not a deadly weapon per se, the mode and manner of its use; i. e., attempting to strike a person while travelling at a speed in excess of one hundred miles per hour, is an adequate factual basis from which the jury could infer a specific intent to kill Chief Baker, as to the driver of the Cadillac: appellant Mitchell. See: Boazman, supra. See also: Bell v. State, 501 S.W.2d 137 (Tex. Cr.App.1973). The evidence is sufficient to sustain appellant Mitchell's conviction.

A much more difficult question is presented with regard to whether there is in the record an adequate basis for inferring a specific intent on the part of appellant Davis to kill Chief Baker. The record does not reflect an agreement by Davis in Mitchell's initial decision to flee from Officer Hambrick. More significantly, the record does not reflect any participation by Davis in Mitchell's attempt to run down Chief Baker. Although the court's charge

to the jury included an instruction on the law of principals, we conclude that the evidence is insufficient to sustain appellant Davis' conviction on the theory that he was a principal to appellant Mitchell's act.

There remains the question of whether the evidence concerning the pistol is adequate to show a specific intent to kill by Davis. It is true that the pistol which was recovered at the conclusion of the chase contained four bullets which had indented primers, although they had not been fired. The State contends in its brief that Chief Baker observed Davis "make some motion . . . consistent with the shooting of a gun." During direct examination by the State, Chief Baker actually testified:

"A I observed some action with his hands, or arms.

"Q All right. Tell us, or show us what you saw.

"A It was similar to this, I believe (indicating).

"Q All right. And did that give you cause for concern?

"A No, sir, not at the time.

"Q Would it be an action consistent with one shooting a gun?

"A Possibly.

"Q Did you have any cause to believe that you were being shot at at that time?

"A No, sir, not at that time."

On the basis of the complaining witness' own testimony, we are unable to hold that the record reflects a specific intent to kill as to appellant Davis. This deficiency in the record is reversible error.

The next two issues raised by appellant Mitchell, the court's refusal to submit a charge to the jury on aggravated assault and on simple assault, are presented in one ground of error which is for that reason multifarious. Since, however, we

are able to discern each separate issue in light of the correct treatment given them by appellant Davis' brief, we will review them in the interest of justice. This court has held that where the weapon used was not deadly per se or in the manner of its use and where the evidence raises a lack of intent to kill the appellant is then entitled to a charge on aggravated assault. See Jackson v. State, 516 S.W.2d 167 (Tex.Cr.App. 1974); Matheson v. State, 508 S.W.2d 77 (Tex.Cr.App.1974); Hargrove v. State, 501 S.W.2d 878 (Tex.Cr.App.1973). In the instant case the weapon (a speeding automobile) was deadly in the manner of its use and there was no evidence to suggest anything other than an intent to kill on the part of appellant Mitchell. Therefore, it was not error to refuse submission of appellant's requested charge on aggravated assault. Likewise, if appellant was not entitled to a charge on aggravated assault, no charge on simple assault was required.

Appellant Mitchell's third ground of error also complains of the court's charge, asserting that the trial court erred by refusing to submit a charge on the law of circumstantial evidence. As previously stated, the use of a weapon deadly in the manner of its use allowed the jury to infer a specific intent to kill. It is well settled that where intent is the only issue to be determined by the circumstances a charge on circumstantial evidence is not required. Belcher v. State, 504 S.W.2d 858 (Tex.Cr. App.1974); Helms v. State, 493 S.W.2d 227 (Tex.Cr.App.1973); Wagner v. State, 463 S.W.2d 432 (Tex.Cr.App.1971); Barber v. State, 462 S.W.2d 33 (Tex.Cr.App. 1971); Schwartz v. State, 172 Tex.Cr.R. 326, 357 S.W.2d 393 (Tex.Cr.App. 1962); 31 Tex.Jur.2d, Instructions, § 123, p. 689 (1962).

The fourth ground of error advanced by appellant Mitchell contends that the trial court erred in admitting evidence of an extraneous offense. When the officers pursuing the Cadillac approached the car at the conclusion of the chase, Mitchell said, "I stole this car in Memphis and these boys in the back seat (Nunez and Scott) are not involved." This statement, together with a billfold and credit card bearing the name of Dr. M. Cogle Shea, Jr. (the Cadillac's owner), was admitted over appellant's objection. As will be seen in the discussion of the next ground of error, Mitchell's remark is clearly a res gestae statement and admissible for that reason. For present purposes, however, we will consider the statement in the context of appellant's complaint regarding the extraneous offense. The general rule is, of course, that extraneous offenses are inadmissible unless they are part of the res gestae of the offense or show identity, intent, motive, scienter, system, or malice. Forbes v. State, 513 S.W.2d 72 (Tex.Cr. App.1974); 23 Tex.Jur.2d, Evidence, § 195, p. 300 (1961). Had the appellants proceeded with Officer Hambrick to the Justice of the Peace at Clyde, the fact the car they were driving was stolen probably would have been discovered. This fact provided the reason for appellant's attempt to flee from the officer, and made the extraneous offense admissible. See Barnes v. State, 503 S.W.2d 267 (Tex.Cr.App.1974); Waffer v. State, 500 S.W.2d 659 (Tex.Cr.App. 1973); Hammonds v. State, 500 S.W.2d 831 (Tex.Cr.App.1973); Albrecht v. State, 486 S.W.2d 97 (Tex.Cr.App.1972).[1]

As previously mentioned, appellant's next ground of error asserts that his statement to the officers was inadmissible at trial because he had not received a *"Mi-*

---

1. In addition, we observe that even if admission of the billfold and credit card was error, any such error would be harmless. since appellant Mitchell's oral statement admitting theft of the car was still admissible as a res gestae statement. In *Forbes,* supra, we held that no error was presented when the complained of extraneous offense was in evidence elsewhere in the record. We have also recently held that erroneous admission of an extraneous offense may be harmless error. Thrush v. State, 515 S.W.2d 122 (Tex.Cr.App.1974).

*randa*" warning before making the statement. The requirements of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966), however, only pertain to custodial interrogation. In the instant case it is not necessary to address appellant's novel argument that he was in custody from the point that he was initially stopped for the speeding offense because his remark about stealing the car was made spontaneously to the officers immediately after the chase. There was no interrogation.

In *Miranda* the court wrote "[v]olunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." See also Taylor v. State, 420 S.W.2d 601, 606 (Tex.Cr.App.1967); Moore v. State, 440 S.W.2d 643 (Tex.Cr.App. 1969); Lucas v. State, 452 S.W.2d 468 (Tex.Cr.App.1970).

Further, it would appear that Mitchell's statement was res gestae and falls within the ambit of Article 38.22, Sec. 1(f), Vernon's Ann.C.C.P.

While we have had occasion to hold that Miranda v. Arizona, supra, did not bar res gestae statements under certain circumstances, see, i. e., Hill v. State, 420 S.W.2d 408 (Tex.Cr.App.1967); Brown v. State, 437 S.W.2d 828 (Tex.Cr.App.1968); Jones v. State, 458 S.W.2d 654 (Tex.Cr.App. 1970), we have recognized that res gestae statements are not always admissible despite *Miranda*. See Smith v. State, 507 S. W.2d 779 (Tex.Cr.App.1974). In the instant case, like the recent decision in Warren v. State, 514 S.W.2d 458 (Tex.Cr.App. # 48,782, delivered October 9, 1974), there was no interrogation of the appellant before the res gestae statement was made. Its admission into evidence was not barred by the absence of a *Miranda* warning.

■ Appellant Mitchell's seventh ground of error complains that the trial court erred in allowing Officer Hambrick to testify as to his "opinion" that the Cadillac would not have hit Chief Baker had it not swerved suddenly from the inside lane to the outside lane where Chief Baker was standing. According to appellant's objection, this remark by Officer Hambrick was "pure conjecture." Initially, we observe that Officer Hambrick's testimony, based upon his observation of the events, was not actually an opinion and certainly did not invade the province of the jury. The statement of almost any fact embraces within itself some element of reasoning and is, to some extent, the result of a process of reasoning. 2 C. McCormick & R. Ray, Texas Law of Evidence, § 1394, p. 218 (2d ed. 1956). In any event, no error is presented for review since this same information; i. e., that Chief Baker would have been hit had he not jumped from the Cadillac's path, was also testified to without objection by Officer Ronald Hill, another D.P.S. agent involved in the chase. It has long been the rule that if the same evidence is admitted elsewhere in the trial without objection, then any error in its admission is waived. See, e. g., Berry v. State, 477 S.W.2d 284 (Tex.Cr.App.1972); 5 Tex.Jur.2d, Appeal and Error—Criminal, § 446, p. 704 (1969).

■ In his final ground of error, appellant Mitchell contends that the trial court improperly denied his motion to produce the written statements of the two hitchhikers, Nunez and Scott. Neither Nunez nor Scott testified at trial; so no issue regarding the use of the statements for cross-examination is presented. Appellant Mitchell relies upon Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which requires the prosecution to disclose evidence *favorable* to the accused. We have examined the two statements which were sealed and made a part of the record and have found that they contain no exculpatory evidence. In fact, the statements by the two hitchhikers corroborate the State's case. Hicks v. State, 452 S.W.2d 465 (Tex.Cr.App.1970), involved a demand for the production of statements of persons present at the scene of the crime but who were not called as

witnesses. As in *Hicks,* the refusal to require production of such statements when they contain no exculpatory material is not error.

For the reasons stated, the judgment in Davis v. State is reversed and remanded, and the judgment in Mitchell v. State is affirmed.